# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Walnut Private Equity Fund, L.P.,

                    Case No.: 1:11-cv-770

        Plaintiff,

    and

Hauser Capital Partners, LLC, et al

        Intervening Plaintiffs,

    v.

                    Judge Michael R. Barrett

Argo Tea, Inc., et al,

        Defendants.

## OPINION & ORDER

This matter is before the Court on the following sets of pending motions.  First, there are the motions of Defendants Mosaix Venture, L.P., Glen Tullman, and Stanley Nitzberg (the "Mosaix Defendants").  These include their Motion to Dissolve Temporary Restraining Order (Doc. 13)[1]; Motion for Reconsideration of the State Court's October 31, 2011 Order (Doc. 16) and; Motion to Dismiss or in the Alternative, Motion to Transfer (Doc. 17).  Second, are the motions of Defendant Argo Tea, Inc. and Arsen Avakian (the "Argo Defendants").  These include their Motion to Dissolve Temporary Restraining Order (Doc. 14) and; Motion to Dismiss, or, in the Alternative, to Transfer

---

[1] All Court document citations are to Docket Entry numbers.  To maintain consistent citations throughout, the Court cites to the page numbers listed in the headers added by the Clerk's Office rather than to internal page numbers or to the Page ID numbers.

As an additional note, the Court would appreciate it if the parties would abide by this Court's Trial Procedure Order (available at http://www.ohsd.uscourts.gov/judges/barrett/Trial%20Procedure_Civil.pdf).  As Section I.E.3 of that Order states, all citations shall "be in main body of text and not in footnotes."  The Court finds the parties' practice of using exceedingly long footnotes to be frustrating.

(Doc. 15).  Plaintiff Walnut Private Equity Fund, L.P. ("Walnut") filed the final pending

motion: Motion to Extend Temporary Restraining Order and Set Hearing on Preliminary

and Permanent Injunctive Relief (Doc. 25).[2]

The issues presented in these motions came before the Court for a hearing held

on November 28, 2011 (the "Hearing").  The date of the Hearing was set by agreement

of all the parties.  (*See* 11/08/2011 Docket Entry.)  Any and all arguments the parties

intended to make on the above motions were made in their present filings and at the

Hearing.  Accordingly, the Court deems that each of the above motions have been

briefed, argued, and are fully ripe for decision.  If the parties believe the Court is

incorrect here, they may freely advise the Court as such.

Plaintiff's Complaint (Doc. 2) requests declaratory judgment and preliminary and

permanent injunctive relief relative to Defendants' plan that would allegedly "destroy[ ]

dividend, redemption, veto and election rights attendant to plaintiff's Preferred Series C

shares, in violation of Argo Tea, Inc.'s corporate charter."  (Doc. 2 ¶ 1.)  In other words,

Walnut seeks to stop Defendants from carrying out a stock recapitalization plan that

would eliminate certain rights it has by virtue of the preferred stock it holds in Argo Tea,

Inc.  (*See* Doc. 2 ¶ 1.)  The Intervening Plaintiffs, Hauser Capital Partners, LLC, and

Hauser Tysoe, LLC (the "Intervening Plaintiffs"), have also filed a Complaint (Doc. 6),

which makes the same allegations.  The Intervening Plaintiffs seek to restrain

Defendants from carrying out a plan that would allegedly breach Argo Tea Inc.'s articles

of incorporation and thereby destroy the Intervening Plaintiffs' rights as preferred

stockholders.  (Doc. 6 ¶ 1.)  The Court's rulings are all summarized below.

---

[2] Note that four other motions appear as pending before this Court's docket.  Each of these motions was originally filed in state court before this case was removed.  (*See* Docs. 3, 4, 7, 8.)  Because the state court disposed of each of these motions (Docs. 3, 4, 7, 8), they are all DENIED as MOOT.

I.     **Background**

On October 5, 2011, Walnut, individually and derivatively on behalf of Argo Tea, Inc. ("Argo"), filed its Complaint in the Court of Common Pleas for Hamilton County, Ohio.  Walnut seeks to enjoin a proposed plan for recapitalization through an exchange offer (the "Plan").  The Plan, as detailed in a memorandum sent to Argo's Board of Directors on September 28, 2011, (the "September Memorandum") (Doc. 31-1) seeks to convert all outstanding classes of preferred stock into a new class of Series A Preferred Stock.  (Doc. 31-1, 1.)  As the September Memorandum states, one of Argo's directors proposed the Plan, and certain holders of current preferred stock "have indicated their support."  (Doc. 31-1, 1.)

Specifically, the Plan proposes a multi-step transaction.  First, Argo's Board of Directors (the "Board") would approve the Plan and would propose an amendment to Argo's Fifth Amended and Restated Certificate of Incorporation (the "Certificate")  to authorize a new class of preferred stock—the Series A Preferred Stock.  Second, the holders of currently outstanding preferred stock would exercise a "mandatory conversion" right, as detailed in the Certificate.  Section 5.1(b) of the Certificate states that upon "vote or written consent of the holders of at least sixty-seven percent (67%) of the then outstanding shares of Preferred Stock . . . all outstanding shares of Preferred Stock shall automatically be converted into shares of Common Stock . . . ."  (Doc. 2-1, 27.)  Thus, upon such a vote, all outstanding shares of preferred stock would be converted into common stock.  Third, a majority of stockholders would approve the Board's proposed amendment to the Certificate authorizing the new class of preferred stock (the Series A Preferred Stock).  In the final step, the holders of the newly issued

3

common stock (issued in step two to replace the cancelled preferred stock) would be given the right to exchange their newly acquired common shares for shares of the newly created Series A Preferred Stock.  (Doc. 31-1, 2.)

The Plan would have several effects.  First and most obviously, all of the rights, preferences, and characteristics of the currently outstanding preferred stock would be eliminated.  (Doc. 31-1, 1.)  As the September Memorandum states, "the results from a mandatory conversion would . . . come at the price to the preferred stockholders relinquishing all of the substantial economic and other benefits, which were negotiated in connection with their initial investments . . . ."  (Doc. 31-1, 2.)  The current holders of the preferred stock would receive the newly issued Series A Preferred Stock in exchange, but the benefits of that new preferred stock would offer "more limited rights than currently exist in certain classes of the preferred stock . . . ."  (Doc. 31-1, 2.)  Second, the Plan would improve Argo's "ability to secure additional capital financings under more favorable terms, while also substantially improving the incentive award structure in place for its common shareholders."  (Doc. 31-1, 2.)  In other words, as stated by Argo's attorney at the Hearing, the Plan would encourage $10 to $15 million in new investment and would allow the company to grow and to incentivize its officers appropriately.  Overall, it is alleged that the Plan would "result in significant benefits to the Company."  (Doc. 31-1, 1.)  Finally, the Plan changes the makeup of the Board. The Plan states that once the Certificate is amended (as proposed by the Board in step one), and approved by the stockholders (in step three), the current Board directors who serve as designees of the preferred stock holders "would step down and would be replaced."  (Doc. 31-1, 3.)  As the September Memorandum concludes, "By precipitating

an early mandatory conversion, Board governance will be streamlined and strengthened, certain consent and veto rights generally applicable to activities undertaken by the Board or the broader investor base would be removed, and the participating preferred and other economic benefits currently held by the certain classes of preferred stock would be eliminated, resulting in a clearer path to additional financing and strategic opportunities."  (Doc. 31-1, 3.)

Plaintiffs maintain that any benefits to Argo would come at the expense of their investment, which is considerable given that Walnut owns $3.65 million of Series C Preferred Stock and the Intervening Plaintiffs own $1 million of Series C Preferred Stock and $300,000 of Series D Preferred Stock.  (Doc. 2 ¶ 12; Doc. 6 ¶¶ 10, 15.)  Furthermore, the current Series C Preferred Stock grants Plaintiffs unique rights.  These rights include "guaranteed cumulative dividends," "veto rights over any conversion of preferred shares into common stock and over other specified actions," "the right to have Argo redeem Plaintiff's Series C Stock in 2014," and, "the right to designate two directors."  (Doc. 2 ¶ 13.)  Additionally, Plaintiff Walnut holds a particular right written into Section 3.3.1 of the Certificate—Argo's articles of incorporation.  (Doc. 2 ¶ 14.)  This "veto right" states that Walnut must consent to any action that would "alter or change the rights, preferences or privileges of the Series C Preferred Stock, directly or indirectly, by merger, consolidation, conversion transaction or otherwise."  (Doc. 2-1, 12.)  Plaintiffs maintain that Defendants' Plan "ignores plaintiff's veto right and would violate the provisions of Argo's certificate of incorporation."  (Doc. 2 ¶ 16; *see also* Doc. 6 ¶ 17.)

On October 5, 2011, the same day Argo's Board was scheduled to meet, Walnut

obtained an *ex parte* temporary restraining order ("TRO") in the state court.  (*See* Doc. 16-1, 8–9.)  The state court ruled as follows: "Walnut will be irreparably harmed in the event that the defendants are permitted to proceed with their Recapitalization Plan"; "Walnut has demonstrated a substantial likelihood that it will prevail on its claims"; "the Recapitalization Plan could eliminate certain rights that Walnut has as a preferred shareholder, the value of which would be impossible to determine," and; "the defendants will not be harmed by a temporary order that preserves the status quo pending an adjudication of the respective rights of the parties."  (Doc. 16-1, 8.)  The state court specifically ordered as follows:

> A.   The defendants are hereby prohibited and enjoined from any vote, action, or consent to attempt to convert the preferred stock of Argo into common stock under Section 5.1 of Argo's certificate of incorporation;
>
> B.   The defendants are hereby prohibited and enjoined from approving an amendment to Argo's certificate of incorporation to create a new class of preferred stock; and
>
> C.   The defendants are hereby prohibited and enjoined from authorizing any proposed exchange of new preferred stock for common stock.

(Doc. 16-1, 8–9.)

On October 13, 2011, Walnut filed a motion to extend the TRO.  The state court granted that motion and extended the TRO through October 31, 2011, the same date the court scheduled the matter for hearing.  (Doc. 14, 2–3; Doc. 16-1.)  In the meantime, the Argo Defendants and the Mosaix Defendants filed motions to dismiss both complaints based on the lack of subject-matter jurisdiction, the lack of personal jurisdiction, and improper venue.  (Doc. 3, 4; Doc. 4, 1; Doc. 7, 1; Doc. 8, 1.)  Defendants made two arguments: (1) an applicable forum-selection clause mandated

dismissal based on improper venue and lack of subject-matter jurisdiction (Doc. 3, 4, 9;

Doc. 4, 6; Doc. 7, 11; Doc. 8, 1), and (2) personal jurisdiction was lacking over the

Mosaix Defendants (Doc. 4, 6; Doc. 7, 11).[3]  On October 31, 2011, after a hearing was

held, the state court overruled Defendants' motions to dismiss.  However, the court did

so with no discussion of the parties' specific arguments.  The court only stated that

"having reviewed the motions to dismiss and response briefs . . . defendants' motions to

dismiss are overruled . . . ."  (Doc. 16-1, 2.)  Upon agreement by the parties, the court

also extended the TRO to December 2, 2011, discovery was commenced, and a

preliminary hearing was set.  (Doc. 16-1, 2.)  But immediately thereafter, on October 31,

2011, the Argo Defendants removed the case to this Court based on diversity of

citizenship.  (Doc. 1; Doc. 14, 3.)  The Mosaix Defendants consented to the removal

several days later.  (Doc. 11.)

## II.    Legal Analysis

Despite the multitude of motions currently pending (Docs. 13, 14, 15, 16, 17, 25),

the parties' arguments can all be classified within two groups: (1) arguments previously

presented to the state court, and (2) new arguments.  This is an important distinction

because of the state court's prior orders.  When a case is removed from state court to

federal court, "'federal court takes it as though everything done in the state court had in

fact been done in the federal court.'"  *Munsey v. Testworth Labs.*, 227 F.2d 902, 903

(6th Cir. 1955) (quoting *Savell v. S. Ry. Co.*, 93, F.2d 377, 379 (5th Cir. 1937)); *see also*

*Sturgill v. Chema Nord Delekkemi Nobel Indus.*, 687 F. Supp. 351, 354 (S.D. Ohio

---

[3] The state court also considered and granted the Intervening Plaintiffs' motion to intervene.  (Doc. 16-1, 2.)  That issue has not been specifically challenged since (*see* Docs. 13, 14, 15, 16, 17, 25), so the Court does not discuss it here.

1988) ("Actions that are removed from state court to federal court are to proceed as if they had been commenced in federal court.").  This rule is related to the law-of-the-case doctrine, which states that "a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation."  *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).  "This doctrine applies with equal vigor to the decisions of a coordinate court in the same case and to a court's own decisions."  *Id.*

The Sixth Circuit has further stated that "[w]hile the doctrine of the law of the case does not preclude reconsideration of prejudgment orders, it does cast an air of caution on such an exercise by a judicial officer."  *Gillig v. Advanced Cardiovascular Sys., Inc.*, 67 F.3d 586, 589 (6th Cir. 1995).  "However, pre-transfer orders 'should not be treated as a special breed.'"  *Id.*  Rather, "judges should have, and do have, the discretion to determine when to reconsider pre-transfer orders in light of the interests that have been advanced by the doctrine of the law of the case."  *Id.*  Accordingly, as the Mosaix Defendants recommend (Doc. 16, 1, 3), as Plaintiff Walnut suggests (Doc. 26, 4), and as the Argo Defendants imply is correct (*see* Doc. 15, 3 n.1), any motions requesting reconsideration of issues previously decided by the state court will be treated as a motion to alter or amend judgment under Rule 59(e).  *See, e.g.*, *Johnston v. Tampa Sports Auth.*, 442 F. Supp. 2d 1257 (M.D. Fla. 2006) (applying Rule 59(e) in federal district court to motion to vacate and dissolve preliminary injunction issued by a state court prior to removal) (overruled on other grounds).  This decision fits within the Sixth Circuit's prior statements on the issue:

> The doctrine of the law of the case, therefore, does not foreclose a court from reconsidering issues in a case

8

> previously decided by the same court or another court. Applied to coordinate courts, the doctrine is a discretionary tool available to a court in order to promote judicial efficiency.  As such, a decision to reconsider a previously decided issue will be deemed erroneous only if it is shown that the transferee court abused its discretion.
>
> We note that other courts have limited a court's discretion to revisit issues previously decided by another court.  We do not think that such limitations are warranted.  It is within the sole discretion of a court to determine if a prior ruling should be reconsidered.  Thus, we decline to impose any conditions or limitations upon a court's power to review a prior ruling of another court.

*Gillig*, 67 F.3d at 590 (internal citations omitted) (quoting *Todd*, 920 F.2d at 403).

Furthermore, the tests traditionally applied to a motion to reconsider under Rule 59(e)

and to a law-of-the-case doctrine reconsideration are identical for practical purposes.

*Compare United States v. Moored*, 38 F.3d 1419, 1422 (6th Cir. 1994) ("[T]he law of the

case doctrine dictates that issues, once decided, should be reopened only in limited

circumstances, e.g., where there is 'substantially different evidence raised on

subsequent trial; a subsequent contrary view of the law by the controlling authority; or a

clearly erroneous decision which would work a manifest injustice.'") *with ACLU of Ky. v.

McCreary County, Ky*., 607 F.3d 439, 450 (6th Cir. 2010) ("A court may grant a motion

to alter or amend judgment only if there was '(1) a clear error of law; (2) newly

discovered evidence; (3) an intervening change in controlling law; or (4) a need to

prevent manifest injustice.'"); *see also United States v. Atlas Lederer Co*., No.

3:91cv309, 2010 WL 2294312, at *2 n.2 (S.D. Ohio June 4, 2010) ("The Sixth Circuit

has applied a nearly identical test when determining whether the law of the case

doctrine prohibits a reconsideration of an earlier decision and whether to grant a motion

to alter or to amend a judgment under Rule 59(e) of the Federal Rules of Civil

Procedure.").  Therefore, this Court will reconsider all issues previously decided by the state court as a motion to alter or amend judgment under Rule 59(e).

However, where the parties' motions present new issues—issues not decided by the state court—the Court uses a normal standard of review.  *See Jones v. Lewis*, 957 F.2d 260, 262 (6th Cir. 1992) ("[Under] the law of the case doctrine, the trial court may consider those issues not decided expressly or impliedly by the appellate court or a previous trial court.").  The Court begins its analysis by applying Rule 59(e) to the issues previously decided by the state court.

## A.      Rule 59(e) Standard

Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  The state court's most recent order was issued on October 31, 2011, (Doc. 16-1) and all the currently pending motions were filed by November 18, 2011 (*see* Docs. 13, 14, 15, 16, 17, 25.)  Each is therefore timely.

The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court and is reversible only for abuse.  *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982); *see also U.S. ex rel. Snapp, Inc. v. Ford Motor Co.*, 618 F.3d 505, 511–12 (6th Cir. 2010).  "A court may grant a motion to alter or amend judgment only if there was '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'"  *ACLU of Ky. v. McCreary County, Ky.*, 607 F.3d 439, 450 (6th Cir. 2010) (*quoting Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).  "A motion under Rule 59(e) is not an opportunity to re-argue a case."  *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*,

146 F.3d 367, 374 (6th Cir. 1998). "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (*quoting* 11 C. Wright & A. Miller, Federal Practice & Procedure § 2810.1, pp. 127–28 (2nd ed. 1995)).

**B.      Previously Decided Issues**

The parties presented the following issues to the state court for decision: (1) whether a forum-selection clause mandated dismissal based on improper venue and lack of subject-matter jurisdiction (Doc. 3, 4, 9; Doc. 4, 6; Doc. 7, 11; Doc. 8, 1; Doc. 16-1, 2); (2) whether personal jurisdiction was lacking over the Mosaix Defendants (Doc. 4, 6; Doc. 7, 11; Doc. 16-1, 2); and (3) whether the TRO should be further extended to enjoin the Plan (Doc. 1-4, 93; Doc. 16-1, 2, 5). The Court considers each under Rule 59(e)'s standard.

**1.      The Forum-Selection Clause**

One of the issues Defendants previously presented to the state court was whether a forum-selection clause mandated dismissal based on improper venue and lack of subject-matter jurisdiction. (Doc. 3, 4, 9; Doc. 4, 6; Doc. 7, 11; Doc. 8, 1.) The Defendants reargue this issue stating, "the State Court made a clear error of law by disregarding the forum-selection clause . . . ." (Doc. 16, 21; *see also* Doc. Doc. 15, 4; Doc. 17, 4.)

Defendants' argument is based on the following facts. Plaintiff Walnut purchased its Series C Preferred Shares pursuant to the Argo Tea, Inc. Series C Preferred Stock Purchase Agreement (the "SPA"). Attached to the SPA as an exhibit was an Amended

11

Certificate of Incorporation filed with the State of Delaware on December 24, 2008, four days before the "closing" on the SPA. (At the time, this was the Argo's Fourth Amended and Restated Certificate of Incorporation (the "Fourth Certificate"), as opposed to the Argo's Fifth Amended and Restated Certificate of Incorporation (the "Certificate") that is in effect today and which this Court has previously quoted. The relevant sections— Sections 3.3.1 and 5.1—are identical in both versions of Certificate. The Court cites to the most recent "Fifth" Certificate for convenience sake.) The SPA contained both an integration clause that encompassed the Certificate, and a forum-selection clause that required any action arising from or based on the integrated agreement be brought in Illinois. Section 7.11 of the SPA—the integration agreement— states, "This Agreement (including the Exhibits hereto), the Restated Certificate [the Fourth Certificate] and the other Transfer Agreements constitute the full and entire understanding and agreement between the parties with respect to the subject matter hereof . . . ." (Doc. 1-2, 32.) Section 7.12 of the SPA—the forum-selection clause—states as follows:

> The parties (a) hereby irrevocably and unconditionally submit to the jurisdiction of the federal and state courts located within the geographic boundaries of the United States District Court for the District of Northern Illinois for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement, (b) agree not to commence any suit, action or other proceeding arising out of or based upon this Agreement except in the federal and state courts located within the geographic boundaries of the United States District Court for the District of Northern Illinois, and (c) hereby waive, and agree not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof

may not be enforced in or by such court.

(Doc. 1-2, 32.)  Defendants maintain that under the SPA, Plaintiffs consented to the

exclusive jurisdiction of Northern District of Illinois courts "for *any dispute* 'arising out of

or based on upon this Agreement.'"  (Doc. 15, 6) (quoting Doc. 1-2, 32).  Defendants

further maintain that Delaware law dictates that the Certificate and the SPA must be

"considered as just one document," because the integration agreement in the SPA

incorporates the entire SPA into the Certificate.  Therefore, Defendants argue, the

SPA's forum-selection clause mandates dismissal by this Court.  (Doc. 15, 8; Doc. 16,

21; Doc. 17, 16.)

The state court did not commit a clear error of law by disagreeing with

Defendants' above interpretation.  As the Intervening Plaintiffs point out (Doc. 27, 7–9),

an absurdity would result if the Defendants' interpretation is followed.  The Intervening

Plaintiffs, in addition to owning Series C Preferred Stock, also own Series D Preferred

Stock.  (Doc. 27, 7.)  And, just as a purchase agreement accompanied Walnut's

purchase of the Series C Preferred Stock, so too did the Intervening Plaintiff's purchase

of the Series D Preferred Stock result in a purchase agreement, specifically, the Argo

Tea, Inc. Series D Preferred Stock Purchase Agreement (the "Series D SPA").  That

Series D SPA has a similar integration agreement, which if Defendants' interpretation is

followed, would mean that the Certificate and the Series D SPA should also be

considered as "one document," just as Defendants allege the Certificate and the SPA

should be considered as one document.  (*See* Doc. 27-1, 17.)  Furthermore, the Series

D SPA contains a related Subscription Agreement with a forum-selection clause of its

own.  However, that forum-selection clause chooses the Southern District of New York

as the appropriate forum.  (Doc. 27-2, 4.)  Accordingly, if Defendant's interpretation of the Certificate is correct there are two, equally binding forum-selection clauses, one of which demands that this case be litigated somewhere within the Northern District of Illinois and another that incongruously demands that this case be litigated somewhere within the Southern District of New York.  Defendants' interpretation of the Certificate therefore leads to an irreconcilable inconsistency.  This Court cannot conclude that the state court made a clear error of law by rejecting such an irreconcilable inconsistency. *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010) ("An unreasonable interpretation [of a contract] produces an absurd result or one that no reasonable person would have accepted when entering the contract."); *see also Gore v. Beren*, 867 P.2d 330, 337 (Kan. 1994) ("In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by law. Results which vitiate the purpose or reduce terms of the contract to an absurdity should be avoided."); *Born v. Hammond*, 146 A.2d 44, 47 (Md. Court App. 1958) ("[I]f a contract was susceptible of two constructions, one of which would produce an absurd result and the other of which would carry out the purpose of the agreement, the latter construction should be adopted.").

Based on the foregoing, any and all Defendants' motions that request dismissal based on the supposed existence of a valid forum-selection clause is DENIED because the state court committed no clear error of law or manifest injustice in making such a ruling.  But as Defendants will recognize, the Court has only considered this issue in an abbreviated manner due to the previously agreed upon expiration date of the TRO.  As the Court has not addressed every specific argument the parties have presented, the

parties may choose to conduct discovery and raise them later in the proceedings.  In other words, if the parties believe it is warranted, they may further develop this issue through discovery if they so choose.  But given the procedural stance here—upon a Rule 59(e) motion to alter or amend—and given the paucity of evidence presented on this issue, the Court presently has no choice but to uphold the state court's decision.

### 2. Personal Jurisdiction

Defendants' second previous argument considered by the state court was that personal jurisdiction was lacking over the Mosaix Defendants.  (Doc. 4, 6; Doc. 7, 11.)  The state court's only statement regarding personal jurisdiction was that "the motions to dismiss for lack of personal . . . jurisdiction made by defendants. . . . are overruled . . . ."  (Doc. 16-1, 2.)  The state court provided no analysis here.  The Mosaix Defendants reargue this issue stating, "The State Court's denial of [the Mosaix Defendants] Motion for lack of personal jurisdiction is based upon clear errors of law and presents a manifest injustice to [the Mosaix Defendants]."  (Doc. 16, 7.)

### a. Rule 12(b)(2) Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for dismissal of a claim for "lack of personal jurisdiction."  Fed. R. Civ. P. 12(b)(2).  A plaintiff bears the burden of establishing personal jurisdiction.  *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).  On a personal-jurisdiction motion to dismiss, district courts have discretion to either, decide the motion on affidavits alone, to permit discovery on the issue, or to conduct an evidentiary hearing to resolve factual questions.  *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 520 (6th Cir. 2006) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).  Pursuant to this

grant of discretion, *see Theunissen*, 935 F.2d at 1459, the Court ORDERS that discovery shall be conducted on the issue of whether personal jurisdiction exists over the Mosaix Defendants. Accordingly, there is no need to further address this issue; it will be addressed upon the completion of discovery.

### 3. Extending the Temporary Restraining Order

The parties also previously argued over whether to extend the TRO to enjoin the Plan. (Doc. 1-4, 93; Doc. 16-1, 2, 5.) Plaintiff Walnut takes the lead on this issue with its motion to extend the temporary restraining order (Doc. 25). This motion requests an extension of the state-court ordered restraining order until this matter can be decided on the merits. (Doc. 25, 1.)

### a. Preliminary Injunction Standard

Under Rule 65 of the Federal Rules of Civil Procedure, a temporary restraining order ("TRO") is meant to preserve the status quo until a court can make a reasoned resolution of a dispute. *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996). TRO's are of a short duration and usually terminate with a ruling on a preliminary injunction. *Workman v. Bredesen*, 486 F.3d 896, 922 (6th Cir. 2007); Fed. R. Civ. P. 65(b). Here, because Defendants are on notice, the Court treats Plaintiff's motion as a motion for a preliminary injunction rather than a motion for a temporary restraining order. *See* Fed. R. Civ. P. 65(a)(1). This linguistic difference is largely academic as the same factors apply to both. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 362 (6th Cir. 2008).

In determining whether to grant a preliminary injunction, this Court must consider four factors: "(1) the likelihood that the movant will succeed on the merits; (2) whether

the movant will suffer irreparable harm if the injunction is not granted; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the injunction advances the public interest." *Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009); *see also Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374 (2008). "These four considerations are 'factors to be balanced, not prerequisites that must be met.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003)). A stronger showing of likelihood of success is required as the other factors militate against granting relief, but less likelihood of success is required when they do support granting relief. *Performance Unlimited, Inc. v. Questar Publ'rs, Inc.*, 52 F.3d 1373, 1385–86 (6th Cir. 1995). "Moreover, a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *City of Monroe*, 341 F.3d at 476.

### b.    Likelihood of Success on the Merits

The first factor to consider on a motion for preliminary injunction is "whether the plaintiff has demonstrated 'a strong likelihood of success on the merits.'" *Certified Restoration Dry Cleaning Network*, 511 F.3d at 543 (quoting *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). While a party is not required to prove his entire case at a preliminary injunction hearing, to establish success on the merits, a plaintiff must show "'more than a mere possibility of success.'" *Id.* (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) and quoting *Six Clinics Holding Corp. II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)). The state court held that "Walnut has demonstrated a substantial likelihood that it will prevail on its claims."

17

(Doc. 16-1, 8.)  Viewing this under Rule 59(e)'s clear error standard, this Court agrees.

Walnut argues that Section 3.3.1 of the Certificate explicitly bars implementation of the Plan.  (Doc. 26, 6.)  Section 3.3.1 of the Certificate gives Walnut a "veto right" over any action that would "alter or change the rights, preferences or privileges of the Series C Preferred Stock, directly or indirectly, by merger, consolidation, conversion transaction or otherwise."  (Doc. 2-1, 12.)  Defendants make a series of counter arguments here, none of which raise the commission of clear error of law by the state court.  Cutting to the heart of the matter, this Court believes that based on the limited development of the record so far in this case, Defendants' interpretation of the Certificate would render Plaintiff's veto right in Section 3.3.1 superfluous.  This issue may develop further through discovery, but for now, the Court sees no clear error of law that warrants overturning the state court's decision that Walnut has demonstrated a substantial likelihood of success on the merits.

### c.    Irreparable Harm

"After determining that a plaintiff has demonstrated a substantial likelihood of success on the merits of his underlying claim, the second factor that a court must consider when deciding whether to issue a preliminary injunction is whether the plaintiff will suffer irreparable injury without the injunction."  *Certified Restoration Dry Cleaning Network*, 511 F.3d at 550 (citing *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)).  "'A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.'"  *Id.* (quoting *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)).  "'[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the

damages difficult to calculate.'" *Id.* (quoting *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir. 1992)).

On this issue, the state court found that "unless the defendants are immediately prevented from proceeding with the Recapitalization Plan, Walnut will suffer immediate and irreparable harm for which it has no remedy at law."  (Doc. 16-1, 8.)  The state court further held that "the Recapitalization Plan could eliminate certain rights that Walnut has as a preferred shareholder, the value of which would be impossible to determine." (Doc. 16-1, 8.)  This Court agrees with one caveat: not only "could" Walnut lose certain valuable rights if the Plan goes forward, Walnut definitely will lose certain valuable rights if the Plan goes forward, such as the value of directors' seats and veto powers, all of which are difficult to monetarily quantify.  As the September Memorandum plainly states, "[w]hile the results from a mandatory conversion would clearly be beneficial to the Company as a whole, *they come at the price to the preferred stockholders relinquishing all of the substantial economic and other benefits*, which were negotiated in connection with their initial investments, by having to accept common stock in the conversion."  (Doc. 31-1, 2) (emphasis added).  The record may develop otherwise after discovery, but presently, the Court has no doubt that Plaintiffs would be irreparably harm if the Plan goes forward.  There is no clear error of law or manifest injustice in the state court's order here.

> ### d.     Harm to Others and the Public Interest

The third factor to consider here is whether the issuance of an injunction "will cause substantial harm to others."  *Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009). The final factor is "whether the injunction advances the public interest."  *Id.*  Because

the first two factors weigh strongly in favor granting the preliminary injunction, and because the evidentiary record is incomplete here, the Court declines to address these two factors specifically.  "[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue."  *City of Monroe*, 341 F.3d at 476. However, the Court briefly addresses one last issue.

      **e.**    **Bond**

The state court also held, "No bond for this relief is required."  (Doc. 16-1, 2.) Defendants contend that the state court committed a clear error of law here by ignoring Rule 65(c)'s security requirement.  (Doc. 13, 16; Doc. 14, 11–12; Doc. 29, 3.) Defendants further argue that because of discussions it has had with potential investors that are now on hold, "Walnut must be required to post a bond between $10 and $20 million."  (Doc. 13, 17.)  Neither of these points is well taken.

As to a bond being required, the Sixth Circuit states, "While we recognize that the language of Rule 65(c) appears to be mandatory, and that many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security."  *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978)).  Pursuant to this discretion, the Court has considered Defendants' request for bond, and it is DENIED because Defendants have not presently produced any evidence showing actual harm.  In short, Defendants maintain that they have a potential investor currently performing due diligence and considering a substantial investment (Doc. 14, 6), but it has presented no

evidence establishing this point. Thus, no bond is required here.

### f.     Extending the Temporary Restraining Order Conclusion

In sum, the Court extends indefinitely virtually the same temporary injunctive relief as ordered by the state court (with one minor addition). This Court therefore ORDERS as follows:

1.  The defendants are hereby prohibited and enjoined from any vote, action, presentment, or consent to attempt to convert the preferred stock of Argo into common stock under Section 5.1 of Argo's certificate of incorporation;

2.  The defendants are hereby prohibited and enjoined from approving an amendment to Argo's certificate of incorporation to create a new class of preferred stock; and

3.  The defendants are hereby prohibited and enjoined from authorizing any proposed exchange of new preferred stock for common stock.

### C.     Newly Raised Issues

The state court had no opportunity to consider several other issues presented by the parties in the currently pending motions. The Court endeavors to cover those issues here.

### 1.     Transfer of Venue

The Defendants argue in the alternative that this case should be transferred to the United States District Court for the Northern District of Illinois. (Doc. 15, 17; Doc. 17, 16.) They claim that this is warranted under 28 U.S.C. §§ 1404(a), 1406, and 1631. (Doc. 15, 16–20; Doc. 17, 16–21.)

**a.** **§ 1404**

Title 28 U.S.C. § 1404(a) states, "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "The burden of proof is on the moving party to demonstrate why a change of venue should be granted." *Hanning v. New England Mut. Life Ins. Co.*, 710 F. Supp. 213, 215 (S.D. Ohio 1989). Additionally, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608 612 (6th Cir. 1984)).

**i.** **Northern District of Illinois**

Defendants first argue that this case should be transferred to the United States District Court for the Northern District of Illinois. (Doc. 15, 17; Doc. 17, 16.) Following the requirements of § 1404(a), the Court must first must determine if this matter could have been brought in the Northern District of Illinois. *See* 28 U.S.C. § 1404(a). In reviewing Plaintiffs' complaints (Doc. 2 ¶¶ 10, 11; Doc. 6 ¶¶ 8, 9) and the Argo Defendants' Amended Notice of Removal (Doc. 10), the Court determines that just as jurisdiction and venue are established in the Southern District of Ohio, so too could they be established in the Northern District of Illinois. *See* 28 U.S.C. §§ 1332(a), 1391. Plaintiffs do not dispute this conclusion. (*See* Docs. 26, 27.)

### ii.    Public and Private Factors

Next, "in ruling on a motion to transfer under § 1404(a), a district court should

consider the private interests of the parties, including their convenience and the

convenience of potential witnesses, as well as other public-interest concerns, such as

systematic integrity and fairness, which come under the rubric of 'interests of justice.'"

*Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting *Stewart*

*Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)).  Private factors include "the 'relative

ease of access to sources of proof; availability of compulsory process for attendance of

unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of

premises, if view would be appropriate to the action; and all other practical problems

that make trial of a case easy, expeditious and inexpensive."  *Piper Aircraft Co. v.*

*Reyno*, 454 U.S. 235, 241 n.6 (1981) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,

509 (1947)).  Public factors include "court congestion; the 'local interest in having

localized controversies decided at home;' the interest in having the trial of a diversity

case in a forum that is at home with the law that must govern the action; the avoidance

of unnecessary problems in conflict of laws, or in the application of foreign law; and the

unfairness of burdening citizens in an unrelated forum with jury duty."  *Id.* (quoting *Gulf*

*Oil*, 330 U.S. at 509).  Other potential factors used to determine whether a change of

venue is warranted are (1) the nature of the suit; (2) the place of the events involved; (3)

the relative ease of access to sources of proof; (4) the nature and materiality of

testimony to be elicited from witnesses who must be transported; (5) the respective

courts' familiarity with the applicable law and the conditions of their dockets; and (6) the

residences of the parties.  *Centerville ALF, Inc v. Balanced Care Corp.*, 197 F. Supp. 2d

23

1039, 1049 (S.D. Ohio 2002) (citing *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991)).

Defendants raise the following points here: (1) the forum-selection clause should be read as an indication that Walnut's "first choice" of forum was in Illinois; (2) Plaintiff's choice of forum should be given less weight because the case was removed to federal court; (3) the convenience of the witnesses; (4) the cost of obtaining attendance of willing witnesses; (5) access to sources of proof; (6) the controlling law will be Illinois law; and (7) the local interest of having the controversy decided "at home."  (Doc. 15, 19; Doc. 17, 16, 20–21.)

### 1)      Plaintiffs' Choice of Forum

Normally, "a plaintiff's choice of forum should be given weight when deciding whether to grant a motion to change venue, [but] this factor is not dispositive."  *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 413 (6th Cir. 1998) (citing *DeMoss v. First Artists Prod. Co.*, 571 F. Supp. 409, 413 (N.D. Ohio 1983)).  However, "a plaintiff's choice of forum is entitled to substantial consideration . . . . where the plaintiff also resides in the chosen forum."  *Steelcase, Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004) (citing *FUL, Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993)).  "On the other hand, the plaintiff's choice of forum is entitled to significantly less weight where the forum has no connection with the matter in controversy."  *Id.* (citing *Lynch v. Vanderhoef Builders*, 237 F. Sup. 2d 615, 617 (D. Md. 2002)).

As to the argument that Plaintiff's choice of forum is entitled to less weight because the case was removed to federal court, "a more appropriate analysis is whether a plaintiff has any connection to a chosen forum, not whether a plaintiff

24

selected state or federal court."  *Apex Sales Agency v. Phoenix Sintered Metals, Inc.*, No. 1:06 CV 01203, 2006 WL 3022987, at *2 n.1 (N.D. Ohio Oct. 23, 2006).  Because Walnut has chosen this forum, and because both Plaintiffs have a strong connection to this forum, the Court initially gives that choice considerable deference.

As to the argument that the forum-selection clause should be read as an indication that Walnut's "first choice" of forum was in Illinois, this point is not well taken. Even a valid forum-selection clause is not dispositive—it merely makes a Plaintiff's choice of forum entitled to less deference.  *Diversified Metal Distrib., LLC v. AK Steel Corp.*, No. 6-55-KKC, 2007 WL 403870, at *4 (E.D. Ky. Feb. 1, 2007).  More importantly, given the Court's above conclusion that a valid forum-selection clause has not been sufficiently demonstrated on the facts currently in evidence, this does nothing to lessen the weight given to Plaintiff's choice of forum.  Accordingly, Plaintiff's choice of forum here is given substantial consideration here, and this factor weighs strongly against transfer under § 1404(a).

### 2)  Convenience of the Witnesses

"'Probably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C. § 1404(a), is the convenience of witnesses.'"  *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 852 (S.D. Ohio 2007) (quoting 15 C.A. Wright, A.R. Miller & E.H. Cooper, *Federal Practice and Procedure*, § 3851).  Here, Defendants argue that "at least six critical witnesses reside in Chicago, including four named parties, the CEO and the CFO of Argo."  (Doc. 15, 19; *see also* Doc. 17, 20.)  However, Plaintiffs also maintain that many of its "key witnesses reside in Ohio . . . ."  (Doc. 26, 14.)

25

Upon balancing the inconvenience here, this factor is neutral. The Court appreciates that Defendants may be inconvenienced by having to travel to Ohio, but its assertions of inconvenience are not so strong as to justify disturbing Plaintiff's choice of forum. "A transfer is not appropriate if the result is simply to shift the inconvenience from one party to another." *Wayne County Emps. Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 975 (E.D. Mich. 2009) (citing *Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F. Supp. 371, 377 (W.D. Mich. 1990)).

### 3)      Other Relevant Factors

As to the other relevant factors Defendants raise, the Mosaix Defendants are incorrect where they state that the controlling law in this case will be Illinois law. In fact, the most crucial controlling law for the merits of this case will be Delaware law. (*See* Doc. 26, 14.) As to the local interest, that factor is strictly neutral as both Illinois and Ohio have a local interest in seeing their own citizens receive justice. Regarding the cost of obtaining attendance of willing witnesses, there is no evidence regarding this factor one way or another. Finally, as to access to sources of proof, again, the Defendants have presented no evidence indicating how this factor weighs in their favor.

In sum, Defendants have not presented sufficient evidence to carry their burden of demonstrating why a change of venue should be granted. *See Hanning*, 710 F. Supp. at 215. Because the balance of factors is not strongly in favor of Defendants, Plaintiff's choice of forum will not be disturbed. *See Reese*, 574 F.3d at 320. Thus, upon consideration of the parties' convenience and the interests of justice, *see* 28 U.S.C. § 1404(a), which includes a balancing of the relevant public and private factors, *Moses*, 929 F.2d at 1137, Defendant's motion to transfer under § 1404(a) is DENIED.

26

**b.** **§ 1406**

The Mosaix Defendants also argue that this case should be transferred under 28 U.S.C. § 1406. (Doc. 17, 16.) Section 1406 provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Accordingly, "section 1406 applies to actions that are brought in an impermissible forum." *Jackson v. L&F Martin Landscape*, 421 F. App'x 482, 483 (6th Cir. 2009) (citing *Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir. 1980)). Under § 1406(a), "[r]ather than dismiss the action when the issue is raised, a district court may, in its discretion transfer the action to a permissible forum." *Martin*, 623 F.2d at 471. The reverse of this means that if venue is proper, then transfer under § 1406(a) is not warranted. *See Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d 531 (6th Cir. 2002) (upholding denial of §1406(a) motion to transfer venue because venue was proper under §1391).

The Mosaix Defendants argue that because this Court does not have personal jurisdiction over them, the Court should transfer the case to the Northern District of Illinois pursuant to § 1406. (Doc. 17, 17.) Because this Court has ordered discovery on the issue of personal jurisdiction over the Mosaix Defendants, it DENIES Defendants' requests to transfer based on § 1406.

**c.** **§ 1631**

The Mosaix Defendants similarly argue that 28 U.S.C. § 1631 warrants transfer. (Doc. 17, 21.) Section 1631 states that "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the

interest of justice, transfer such action . . . to any other such court in which the action . .
. could have been brought at the time it was filed or noticed . . . ." 28 U.S.C. § 1631.
The Mosaix Defendants argue that because they are not subject to personal jurisdiction
here, § 1631 applies here. (Doc. 17, 21.) But again, because the Court has ordered
discovery on the issue of personal jurisdiction over the Mosaix Defendants, it DENIES
Defendants' requests to transfer based on § 1631.

### 2. Pleading a Shareholder Derivative Action

Additionally, the Argo Defendants seek dismissal under Rule 12(b)(6) for two
reasons: (1) Walnut has not properly pled a shareholder derivative action because its
allegations "are not derivative in nature as they implicate its rights alone, and not those
of the corporation," (Doc. 15, 14–15), and (2) because "Walnut has not articulated a
proper excuse for its failure to demand that Argo's board bring this action" (Doc. 15, 15).
Because this issue was not discussed at the Hearing, and because any decision here
will have no effect on the main focus of this Order—the TRO—the Court declines to
address this issue at the present time. The parties may conduct discovery on this
matter if they wish.

## III. Conclusion

Consistent with the foregoing, the following motions of the Mosaix Defendants
are **DENIED**: Motion to Dissolve Temporary Restraining Order (Doc. 13); Motion for
Reconsideration of the State Court's October 31, 2011 Order (Doc. 16); and, Motion to
Dismiss or in the Alternative, Motion to Transfer (Doc. 17). The following motions of the
Argo Defendants are **DENIED**: Motion to Dissolve Temporary Restraining Order (Doc.
14); and, Motion to Dismiss, or, in the Alternative, to Transfer (Doc. 15). Plaintiff

Walnut's Motion to Extend Temporary Restraining Order and Set Hearing on Preliminary and Permanent Injunctive Relief (Doc. 25) is **GRANTED**.  More specifically, the Court rules as follows:

- The Court **ORDERS** discovery to be conducted on the issue of personal jurisdiction over the Mosaix Defendants—Mosaix Venture, L.P., Glen Tullman, and Stanley Nitzberg.

- The Temporary Restraining Order issued by the state court is extended indefinitely as follows:

   1. The defendants are hereby prohibited and enjoined from any vote, action, presentment, or consent to attempt to convert the preferred stock of Argo into common stock under Section 5.1 of Argo's certificate of incorporation;

   2. The defendants are hereby prohibited and enjoined from approving an amendment to Argo's certificate of incorporation to create a new class of preferred stock; and

   3. The defendants are hereby prohibited and enjoined from authorizing any proposed exchange of new preferred stock for common stock.

- Because they were disposed of by the state court, the following motions are all **DENIED as MOOT**: Defendants Argo Tea, Inc. and Arsen Avakian's Motion to Dismiss Complaints of Walnut Private Equity Fund and Hauser Capital Partners, LLC (Doc. 3); Motion to Dismiss of Defendants Mosaix Ventures, L.P., Glen Tullman, and Stanley Nitzberg (Doc. 4); Defendants Mosaix Ventures, L.P., Glen Tullman, and Stanley Nitzberg's Motion to Dismiss Intervening Plaintiffs' Verified Complaint (Doc. 7) and; Motion of Defendant Argo Tea, Inc. to Dismiss the Complaint of

Intervening Plaintiffs Hauser Partners, LLC and Hauser Tysoe, LLC (Doc. 8).

- The Court will set a telephone Status Conference shortly to discuss the case moving forward and to set a combined hearing and trial on the merits.

   **IT IS SO ORDERED**.

_s/Michael R. Barrett_
United States District Judge
